| | | |
|---|---|---|
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:19-CV-0090-B |
| ARMANDO MARTINEZ, BENITA | § | |
| MARTINEZ, and BBVA COMPASS | § | |
| FINANCIAL CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Ocwen Loan Servicing, LLC's ("Plaintiff" or "Ocwen") Motion

for Default Judgment (Doc. 7), filed April 15, 2019. For the reasons discussed below, the Court

**GRANTS** Ocwen's motion.

## I.

## BACKGROUND

On January 10, 2019, Ocwen filed a complaint against Armando Martinez and Benita

Martinez, alleging that Armando Martinez and Benita Martinez ("Individual Defendants") defaulted

on a mortgage agreement held by Ocwen. Doc. 1, Pl.'s Compl., ¶¶ 18–19. Ocwen's complaint also

alleges that BBVA Compass Bank ("BBVA") failed to extinguish its own lien on Individual

Defendants' real property commonly known as 2918 Bay Oaks Drive, Dallas, Texas 75229, and more

particularly described as:

> LOT 4, BLOCK 34/6461 OF WALNUT HILLS ADDITION, FOURTH
> INSTALLMENT, AN ADDITION TO THE CITY OF DALLAS, DALLAS
> COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN

VOLUME 23, PAGE 215, MAP RECORDS, DALLAS COUNTY, TEXAS.

*Id.* ¶¶ 9, 30. Ocwen alleges that BBVA's lien on the property was already satisfied in full by proceeds from the loan agreement on May 26, 1999. *Id.* ¶ 22. Plaintiff seeks a judgment allowing foreclosure and quieting title on the property.[1] *Id.* ¶¶ 26, 30.

Plaintiff's quiet-title claim relies on the following allegations: Plaintiff claims that on July 31, 1990, the property's prior owners executed a deed of trust on the property to Capitol Mortgage Bankers, Inc., with the agreement entered into official public records in Dallas County, Texas under the name "Document Number 6480." *Id.* ¶ 15. Plaintiff also claims that Capitol Mortgage Bankers Inc., merged into Temple-Inland Mortgage Corporation on July 16, 1992, which then changed its name to Guaranty Residential Lending, Inc. on June 7, 2001. *Id.* ¶ 16. Plaintiff also asserts that Guaranty Residential Lending, Inc. was subsequently acquired by Guaranty Bank. *Id.* Finally, Plaintiff claims that the FDIC assumed control over Guaranty Bank, at which point the FDIC sold Guaranty Bank's interest in the property to BBVA. *Id.* Plaintiff asserts "upon information and belief" that the Capitol deed of trust was satisfied prior to March 26, 1999. *Id.* ¶ 15. Based on these events, Plaintiff seeks a judgment against BBVA declaring that Plaintiff holds a superior lien on the property, and requests that BBVA's lien is released as a cloud on title. *Id.* ¶ 30.

Plaintiff's foreclosure request relies on three sets of allegations: the issuance of the original mortgage, the assignments of the deed of trust, and the subsequent default. First, as to the original mortgage, Individual Defendants borrowed $94,951 from the Shelter Mortgage Company on or about

---

[1] Specifically, Plaintiff is seeking a declaratory judgment that Plaintiff's security instrument secures: (a) the outstanding balance of the note; (b) pre-judgment interest; (c) post-judgment interest from the date of judgment until paid; (d) costs of court; and (e) attorneys' fees in an amount to be determined upon subsequent motion pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(i). Doc. 7, Pl.'s Mot., 4.

May 26, 1999. Doc. 1-1, Pl.'s App., 3 (Ex. A) (note). As collateral for the loan, Individual Defendants agreed that their lender was allowed to invoke power of sale and other remedies against the property should Individual Defendants fail to pay. *Id.* at 12 (Ex. B) (deed of trust). The agreement stated that should Individual Defendants fail to make required monthly payments within 30 days, Individual Defendants would be in default and the lender could exercise a right to accelerate the date of the Note's maturity by mailing notice of the default to the borrowers and demand that the entire amount owed be paid within 30 days. *See id.* at 9. If the lender accelerated the debt and demanded payment in full, the lender was authorized to exercise power of sale on the property. *See id.* at 12.

Second, as to the assignments of the deed of trust, Plaintiff alleges that on June 4, 1999, the Shelter Mortgage Company assigned the deed of trust to the Corinthian Mortgage Corporation. *Id.* 16 (Ex. C) (first assignment of the deed of trust). The Corinthian Mortgage Company then assigned the deed of trust to the GMAC Mortgage Corporation on March 1, 2000. *Id.* 19 (Ex. C) (the second assignment). The GMAC Mortgage Corporation then assigned the deed of trust to its own successor entity, GMAC Mortgage, LLC, on November 11, 2011. *Id.* at 22 (Ex. C) (the third assignment). Finally, GMAC Mortgage LLC assigned the deed of trust to Plaintiff on May 22, 2013. *Id.* at 24 (Ex. C) (the fourth assignment).

Third, Plaintiff's foreclosure request also relies on the Individual Defendants' alleged default. Specifically, Plaintiff alleges that on September 25, 2018, Plaintiff mailed the notice of default to Individual Defendants. *Id.* at 27–38 (Ex. D) (notices of default). After Individual Defendants failed to cure the default, Plaintiff sent Individual Defendants notices of acceleration, stating that the note was due in full on December 28, 2018. *Id.* at 40–43 (Ex. E) (notices of acceleration).

On January 30, 2019, Plaintiff served all Defendants with copies of its complaint. Doc. 5, Return of Summons. To date, Defendants have neither answered nor otherwise made an appearance in this case. On April 15, 2019, Plaintiff requested the clerk enter default (Doc. 6) and moved for default judgment (Doc. 7). Plaintiff served Defendants copies of both documents. Doc. 6, Request for Default, 4; Doc. 7, Mot., 5. The clerk has since entered default (Doc. 8). Defendants failed to respond to Plaintiff's motion and the time to do so has passed. The Court now considers the motion for default judgment.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. According to Rule 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b).

That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts

have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing so, the Court is to assume that due to its default, defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002))). Normally damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, if the amount of damages can be determined with mathematical calculation by

reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court concludes that a default judgment is procedurally warranted and supported by a sufficient factual basis in Plaintiff's complaint.

A.      *Whether An Entry of Default Judgment Is Procedurally Warranted*

In this case, after reviewing Ocwen's motion in light of the factors, the Court finds that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, there is no evidence before the Court to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fourth, Defendants have failed to answer or otherwise respond to Ocwen's complaint for almost five months. *See John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013) (entering default judgment against a defendant that "had over five months to answer or otherwise respond to plaintiff's complaint"). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants. Thus, Ocwen has met the procedural requirements for default judgment.

B.      *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants are deemed to have admitted the allegations set

forth in Ocwen's complaint. Nonetheless, the Court must review the pleadings to determine whether

they present a sufficient basis for Ocwen's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In

conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim
> showing that the pleader is entitled to relief." The purpose of this requirement is "to
> 'give the defendant fair notice of what the . . . claim is and the grounds upon which
> it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v.
> Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only
> "be enough to raise a right to relief above the speculative level, on the assumption
> that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*
> (footnote and citations omitted). "[D]etailed factual allegations" are not required,
> but the pleading must present "more than an unadorned, the-defendant-unlawfully-
> harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

1.     Foreclosure Action

A mortgagee is permitted to seek foreclosure of a lien against real property when a borrower

is in default on its obligations under a security instrument. *See Huston v. U.S. Bank Nat'l Ass'n*, 988

F. Supp. 2d 732, 740 (S.D. Tex. 2013). A security instrument is a "deed of trust, mortgage, or other

contract lien on an interest in real property." Tex. Prop. Code § 51.0001(6); *see also Guzman v. Bank

of N.Y. Mellon*, 2013 WL 12116405, at *3 n.1 (W.D. Tex. Apr. 16, 2013) ("Courts applying Texas

law have regularly referred to security instruments granted in a home equity loan situation as deeds

of trust."). A mortgagee includes the "grantee, beneficiary, owner, or holder of a security instrument

. . . or if the security interest has been assigned of record, the last person to whom the security

interest has been assigned of record." *Id.* § 51.0001(4). A mortgagee seeking to foreclose on a security

instrument must provide written notice by certified mail to the debtor stating that the debtor is in

default under the security instrument and allow the debtor at least 20 days to cure the default prior to initiating foreclosure proceedings. *Id.* § 51.002(d). "To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) plaintiffs are in default under the note and security instrument; and (4) plaintiffs were sent notice of default and acceleration." *Huston*, 988 F. Supp. 2d at 740 (citing Tex. Prop. Code § 51.002).

Here, Plaintiff has demonstrated that a debt exists by providing a copy of the initial promissory note. Doc. 1-1, Pl.'s App., 3 (Ex. A). Plaintiff has demonstrated that the debt is secured by a lien on the property under Article 16, Section 50(a)(6) of the Texas Constitution by providing a copy of the deed of trust. *Id.* at 6 (Ex. B). Plaintiff has demonstrated that the Individual Defendants are in default of the note and associated security instrument by providing a calculation of the overdue payment which was addressed to the Individual Defendants. *Id.* at 30 (Ex. D) (notice of default). Finally, Plaintiff has demonstrated that the Individual Defendants were sent notice of both the default and the acceleration by providing a copy of the notifications of default sent to Individual Defendants and a copy of the notification of intent to accelerate the debt. *Id.* at 27–38; *id.* at 40–43 (Ex. E) (notices of acceleration).

Thus, Plaintiff has demonstrated that: (1) a debt exists; (2) the debt is secured by a lien; (3) the Individual Defendants are in default under the note and security instrument; and (4) that Individual Defendants were sent notices of default and acceleration on the debt, which are required to warrant the relief sought. *See, e.g., Deutsche Bank Nat'l Tr. Co. v. Blackerby*, 2017 WL 8811742 (W.D. Tex. Dec. 28, 2017), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 67798 (W.D. Tex. Dec. 28, 2017) (granting default judgment in a similar foreclosure case).

2.      Quiet Title

"The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "The plaintiff has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Id.* "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.).

Ocwen demonstrates that it has an interest in the property by providing the series of assignments that brought the deed of trust into its possession. Doc. 1-1, Pl.'s App., 16–25 (Ex. C). Ocwen also fulfills the second requirement through its well-pleaded allegation that a rival deed to the same property was previously entered into public record. Doc. 1, Pl.'s Compl., ¶ 15. Finally, Ocwen fulfills the third requirement through its well-pleaded allegations, which were conceded as true by BBVA's default, that BBVA's lien had already been satisfied. *Id.* Thus the Court finds that Plaintiff has met its burden on its quiet-title claim. *See, e.g., U.S. Bank Nat'l Ass'n v. Garza*, 2019 WL 311872, at *4 (S.D. Tex. Jan. 24, 2019) (granting default judgment on a quiet-title claim).

3.      Attorneys' Fees

Last, Ocwen requests reasonable and necessary attorneys' fees in its motion for default judgment, based on Texas Civil Practice and Remedies Code Chapter 38 and the terms of the loan documents executed by defendants. Doc. 7, Pl.'s Mot., ¶ 15.

A prevailing party in a civil action may recover attorneys' fees from an individual or a corporation in a claim for a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); *see also* Fed.

R. Civ. P. 54(d)(2). While § 38.001 (8) uses the term "may," "the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.3 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). This is true even in the default judgment context. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) (upholding an award of attorneys' fees granted as part of a default judgment).

The Fifth Circuit has described the basic procedure and standard for determining attorneys' fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cty.*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Ocwen attaches no supporting affidavit in its complaint to determine the attorneys' fees and no list of the costs related to its suit, and instead indicates it will move for such amounts under

Federal Rule of Civil Procedure 54 after entry of judgment. Doc. 7, Pl.'s Mot., 5. The Court will consider attorneys' fees only upon such a properly supported motion.

**IV.**

**CONCLUSION**

In light of Defendants' default and the nature of Plaintiff's claims, the Court orders as follows:

It is **ORDERED, ADJUDGED, AND DECREED** that the material allegations of the Complaint be and are deemed admitted as to all Defendants. It is further,

**ORDERED, ADJUDGED, AND DECREED** that an event of default has occurred on that certain promissory note, executed on or about May 26, 1999, by Armando Martinez and Benita Martinez, and payable to Shelter Mortgage Company, LLC (hereinafter "note"). It is further,

**ORDERED, ADJUDGED, AND DECREED** that that certain deed of trust dated May 26, 1999, signed by Armando Martinez and Benita Martinez and recorded as Document No. 604798 in the real property records of Dallas County, Texas (hereafter "security instrument"), provides Plaintiff, as the mortgagee of the security instrument, in the event of a default on the obligations on the note, with a first lien security interest on that certain real property commonly known as 2918 Bay Oaks Drive, Dallas, Texas 75229 ("property"), and more particularly described as follows:

> LOT 4, BLOCK 34/6461 OF WALNUT HILLS ADDITION, FOURTH INSTALLMENT, AN ADDITION TO THE CITY OF DALLAS, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP THEREOF RECORDED IN VOLUME 23, PAGE 215, MAP RECORDS, DALLAS COUNTY, TEXAS.

It is further,

**ORDERED, ADJUDGED, AND DECREED** that the Plaintiff is the mortgagee of the security instrument. It is further,

**ORDERED, ADJUDGED, AND DECREED** that Plaintiff's interest in the property, as mortgagee, is senior to any competing interest in the property. Specifically, Plaintiff's lien on the property is superior to any competing interest of Defendant BBVA Compass Financial Corporation ("BBVA") on the property, due to extinguishment by satisfaction of BBVA's lien. It is further,

**ORDERED, ADJUDGED, AND DECREED** that the following are secured by the security instrument on the property: the outstanding balance on the note, including attorneys' fees; pre-judgment interest; post-judgment interest; and costs of court. It is further,

**ORDERED, ADJUDGED, AND DECREED** that due to the event of default on the note, Plaintiff, or its successors or assigns, may enforce its security instrument against the property through non-judicial foreclosure of the property as provided in the security instrument and § 51.002 of the Texas Property Code. It is further,

**ORDERED, ADJUDGED, AND DECREED** that Plaintiff may further communicate with all Defendants, and all third parties reasonably necessary to conduct the foreclosure sale. It is further,

**ORDERED, ADJUDGED, AND DECREED** that BBVA's lien on the property no longer represents a cloud on title and is hereby extinguished as an encumbrance on the property. It is further,

**ORDERED, ADJUDGED, AND DECREED** that all costs are to be taxed against all Defendants. It is further,

**ORDERED, ADJUDGED, AND DECREED** that any relief not specifically granted in this judgment is **DENIED** and any party not otherwise disposed of is **DISMISSED**. This is a final judgment, disposing of all parties and all claims and may be appealed by any party hereto.

SO ORDERED.

SIGNED: May 31, 2019.


_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE